UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

GREGORY MORGAN,

               Defendant.

                                      /

No. 11-20619

District Judge Paul D. Borman

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court is Defendant Gregory Morgan's Motion to Vacate Sentence Under 28 U.S.C. §2255 [Docket #77], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that the Motion be DENIED.

## I.   FACTS

On July 23, 2012, Defendant pled guilty to Count Two of a first superseding indictment charging of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841. He pled guilty pursuant to a Rule 11 Plea Agreement, which he signed, and which set forth the following factual basis for the plea:

> "On October 25, 2010, Defendant Gregory Morgan aided and abetted in the transport of approximately 317 kilograms of marijuana, a Schedule I controlled substance, from Arizona to Michigan by truck. Defendant intended to and did help commit this crime by giving drug money to the driver, codefendant Steven Lee Miracle, and by providing Defendant's own

-1-

tractor trailer for the transportation of both the money and the drugs. Defendant did all of this with the intent that marijuana be brought back to Michigan for Distribution." Rule 11, ¶ 1-C [Doc. #45].

The Rule 11 Agreement set forth an agreed-upon sentencing guideline range of 37 to 46 months, which reflected "the limitation of the application of the statutory minimum sentence of five years and the application of a safety valve deduction of two levels pursuant to USSG § 2D1.1(b)(11) and § 5C1.2(a)" *Id.* ¶ 2-B. The Agreement capped a sentence at "the top of the sentencing guideline range as determined by Paragraph 2B" *Id.* ¶ 3-A. The Agreement also provided for the Defendant's forfeiture of a number of tractors and trailers, and the entry of a money judgment. *Id.* ¶ 4.

At the plea proceeding, the Court asked the Defendant what he did on or about October 25, 2010 that made him believe that he was guilty of possessing with intent to distribute about 317 kilograms of marijuana. The Defendant provided the following factual basis, under oath:

THE DEFENDANT: Around that date, sir, I aided and abetted in the transport of marijuana.

THE COURT: Okay. And you aided and abetted Mr. Howard and Mr. Miracle?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And you had trucks?

THE DEFENDANT: Yes, sir.

THE COURT: And trailers?

THE DEFENDANT: Yes, sir.

THE COURT: And you filled them up with marijuana and drove them here?

THE DEFENDANT: Yes, sir.

THE COURT: And some of this occurred in the Eastern District of Michigan? Is that where they were driven to?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. what city in particular?  If you remember?

THE DEFENDANT: I think it was Belleville.

THE COURT: Okay. That's the Eastern District of Michigan.  And you knew marijuana was an illegal, controlled substance?

THE DEFENDANT: Yes, sir.

AUSA GORGON: Mr. Morgan, did you intend that that marijuana, once it came to Michigan, would be distributed?

THE DEFENDANT: Yes. (Plea Transcript, Doc. #74, Tr. 7-23-12, at 16-17).

In pleading guilty, the Defendant confirmed that he had discussed the matter with his attorney, and that he was satisfied with his attorney's advice and service.  *Id*. at 6. He also confirmed that nothing had been promised to him other than what was in the Rule 11 Agreement, and that there were no unspoken "side deals" between himself and his attorney or the government. *Id*., 15.

On August 27, 2013, Defendant was sentenced to a term of 30 months imprisonment, below the guidelines range, and with the benefit of the safety valve

provision. At sentencing, Defendant told the Court, "I know what I did was stupid," and stated, "I certainly apologize and tell you I'm sorry for whatever I did wrong, sir." (Sentencing Transcript, 8/27/13, Doc. #75, 14-15).

Notwithstanding an appeal waiver provision in the plea agreement, Defendant filed a Notice of Appeal on September 11, 2013 [Doc. #61]. On September 30, 2013, Defendant, through new counsel, filed an "emergency motion to reopen case and for other relief." [Doc. #64]. In that motion, Defendant alleged that his prior attorney, Otis Culpepper, was aware of an audio tape recordings in which co-defendant Steve Miracle stated that "Defendant Morgan had nothing to do with the marijuana that he picked up on his truck route and that Mr. Morgan never brought him any money." Motion, at 5. And contrary to what Defendant stated under oath at his plea proceeding, he alleged in the motion that his lawyer told him "that he would not serve any jail time even though the papers presented by the Federal Government indicated possible jail time." *Id*. at 6. Defendant also alleged that he did not see his presentence report prior to sentencing.

On October 4, 2013, the Court denied Defendant's motion, holding that there were no extraordinary circumstances that would support an exception to the rule set forth in *Capaldi v. Pontesso*, 135 F.3d 1122, 124 (6th Cir. 1998), that an notice of appeal divests the District Court of jurisdiction. *See* Order [Doc. #67].

In the present motion, Defendant raises essentially the same allegations put forth in the prior motion to reopen the case, i.e., that his attorney was constitutionally ineffective

for failing to exploit a recorded conversation between the Defendant and Miracle. It was

Defendant himself who recorded this conversation. The Defendant again contends that he

did not see his presentence report until after he was sentenced. He also claims that he is

innocent.

The government has submitted attorney W. Otis Culpepper's declaration as an

exhibit to its response [Doc. #82]. Defendant retained Mr. Culpepper to represent him on

or about June 5, 2012. *Culpepper Declaration*, ¶ 2. Mr. Culpepper states that pretrial

discovery revealed that co-defendant Miracle had "immediately cooperated with law

enforcement against his codefendants when he was caught driving 317 kilograms of

marijuana in Mr. Morgan's truck;" that "law enforcement officers had observed Mr.

Morgan handing Miracle a duffle bag full of cash at a truck stop" a few days before the

seizure; that Miracle admitted the cash was to pay for the drugs; and that "Miracle

admitted to doing other drug runs for Howard and Mr. Morgan in the past." *Id*. ¶ 4.

Mr. Culpepper states that Defendant never gave him a tape or audio recording, but

that at one meeting, his client played a recording where he and Miracle discussed

Miracle's stop and the seizure of the marijuana. However, Mr. Culpepper adds that "in

my judgment nothing that was said on that tape was credibly excupatory. At best, if

memory serves, Miracle might have given Mr. Morgan assurances that he had not said

anything about him. It was my opinion–particularly in light of the discovery revealing

Miracle's cooperation–that Miracle was merely telling Mr. Morgan what he wanted to

hear in order to further the investigation." *Id*. ¶ 7. Finally, Mr. Culpepper states that "Mr.

Morgan's claim that the recording contains admissions by Miracle that he 'made up' Mr.

Morgan's involvement and 'lied to authorities' is untrue." *Id*. ¶ 8.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set

aside, or correct his sentence on the ground that the sentence was imposed in violation of

the United States Constitution.  "[A] defendant must show a fundamental defect in the

proceedings which necessarily results in a complete miscarriage of justice or an egregious

error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 6th Cir. 1998)

(internal quotation omitted);  *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994).  To

prevail under § 2255, a petitioner must demonstrate the existence of an error of

constitutional magnitude which had a substantial and injurious effect or influence on the

guilty plea or the jury's verdict. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir.2003).

## III.   DISCUSSION

The Sixth Amendment guarantees the accused in a criminal prosecution the right

to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984).  *Strickland*  sets forth a two-part test for assessing claims of

ineffective assistance.  First, did the attorney make errors "so serious that counsel was not

functioning as the counsel guaranteed by the Sixth Amendment,"  466 U.S. at 687.  To

establish deficient performance under this prong of *Strickland*, the defendant must show

that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. *Strickland* stated that an attorney is "strongly presumed" to have "rendered adequate assistance and made significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

Where ineffective assistance is alleged in the context of a guilty plea, it must be shown that counsel's performance was deficient and that the deficient performance caused the defendant to reach a different decision regarding the plea. *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To satisfy the "prejudice" prong of *Strickland*, the defendant must show that, but for counsel's errors, he or she would not have pled guilty, but would have insisted on going to trial. *Hill*, 474 U.S. at 58-59; *Warner* v. *United States*, 975 F.2d 1207, 1214 (6th Cir. 1992)(prejudice shown if defendant shows a reasonable probability that but for counsel's defective advice, he would not have pled guilty).

First, Defendant has not shown that Mr. Culpepper's performance was constitutionally deficient. The government had evidence against the Defendant, in the

form of co-defendant testimony and the observations of Defendant giving Miracle a duffel bag shortly before the seizure. The drugs were seized from Plaintiff's truck. Under these circumstances, it was not unreasonable for counsel to negotiate a plea.

Secondly, although Defendant argues that the tape recording of himself and Miracle would have necessarily resulted in a not guilty verdict at trial, it is not as clearly exculpatory as he assumes. As Mr. Culpepper points out in his declaration, it would just as likely be seen as Miracle telling the Defendant what he wanted to hear. The decision to negotiate a plea rather than advising Defendant to go to trial with weak and ambiguous evidence is sound strategy, and certainly does not fall below an objective standard of reasonableness. Moreover, the recording was not something that counsel hid from the Defendant, or that the Defendant was unaware of when he made the decision to plead guilty; the Defendant himself recorded his conversation with Miracle.

Most importantly, while the Defendant now protests his complete innocence, he raised his right hand and acknowledged under oath at the plea proceeding that he aided and abetted Howard and Miracle in the transportation of marijuana in his trucks, and that he intended the marijuana to be distributed in the Eastern District of Michigan. At that same proceeding, and again under oath, he declared that he had discussed the matter with his attorney, and that he was satisfied with his attorney's advice and service. As the Supreme Court noted in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as

well as any findings made by the judge accepting the plea, constitute a formidable barrier

in any subsequent collateral proceedings. Solemn declarations in open court carry a strong

presumption of verity." *See also United States v. Rennick*, 219 Fed.App'x 486 489 (6th

Cir. 2007)(a defendant's statements made during a guilty plea proceeding "carry a strong

presumption of truthfulness."). Defendant's plea was knowing, voluntary, and intelligent,

and he has not shown that his attorney's performance fell below an objective standard of

reasonableness.[1]

As to the prejudice prong of *Strickland*, Defendant has not shown that his decision

to plead guilty rather than go to trial would have been different but for counsel's

performance. *Hill v. Lockhart, supra*. I note that while Defendant made his solemn

declaration of guilt on July 23, 2012, sentencing was delayed until August 27, 2013, at

which time he apologized to the Court and acknowledged that what he did was "stupid."

Yet, despite the passage of over a year from the time of his plea, a year in which, away

from the pressure and stress of the courtroom, he could dispassionately contemplate what

he now says he falsely told the Court about his involvement, Defendant did not raise this

issue until after sentencing. And at the sentencing, he expressed contrition, not innocence.

This weighs strongly against his argument that he was coerced into falsely inculpating

---

[1] Defendant's claim that he did not see his presentence report before the sentencing hearing is also belied by the transcript, where counsel clearly states that he reviewed and discussed the report with his client. The Defendant was present, heard this statement, and offered not one word to contradict counsel's representation to the court.

himself at the plea. He pled guilty not because of his attorney's ineffectiveness, but

because he made a rational and intelligent decision that doing so was in his best interests.

As Judge Borman observed in his Order [Doc. #67] denying the Defendant's motion to

reopen the case, after reviewing the same exhibits that have been proffered with the

present motion:

> "None of these undermine what happened in the courtroom: an intelligent
> criminal, knowingly and voluntarily entering a plea to drug trafficking,
> benefitting from the safety valve to avoid a five year mandatory minimum
> sentence, benefitting from a downward variance, and now experiencing
> 'pleader's remorse.'" *Id*. at 3.

Finally, Defendant's claim of actual innocence falls flat. In an actual innocence

claim, a defendant "must demonstrate that, in light of all the evidence, it is more likely

than not that no reasonable juror would have convicted him." *Bousley v. United States*,

523 U.S. 614, 623 (1998). The recorded conversation and the other exhibits on which

Defendant so heavily relies do not rise to a level sufficient to show actual innocence. At

best, they constitute evidence that a jury *might* be able to consider against the

government's evidence–testimony of a codefendant and surveillance by government

agents. But more significantly, Defendant's guilty plea belies an actual innocence claim.

*See Luster v United States*, 168 F.3d 913, 916 (6th Cir. 1999)(a defendant's guilty plea

"serves as an admission that he is not innocent of the crimes charged"); *Loving v.*

*Mahaffey*, 27 Fed.App'x 925, 926 (10th Cir. 2001)(noting that an actual innocence claim

is difficult to establish, especially when a defendant pleads guilty).

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion to Vacate Sentence Under  28 U.S.C. §2255 [Docket #77] be DENIED.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 2, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 2, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager